## Case No. 16,395.

### UNITED STATES v. STEVENSON.

[1 Abb. U. S. 495.] [1]

District Court, S. D. New York. Feb. Term, 1869.

PROCESS ACTS—FOLLOWING STATE PRACTICE—ATTACHMENTS—RULES OF COURT.

1. An information prosecuted in a district court must be regarded and treated as a common law proceeding; except in that aspect a district court can have no jurisdiction of it.

2. The forms of process (except style) and modes of proceeding in the United States courts, sitting within the thirteen states which originally composed the Union, in actions at common law, are the same as those which were employed in the supreme courts of the states, respectively, on May 8, 1792; except so far as the United States courts may have prescribed alterations.

3. Section 1 of the act of May 19, 1828 (4 Stat. 278), relative to process of the United States courts, does not apply within states which were members of the Union before September 29, 1789. And the act of May 8, 1792 [1 Stat. 275], does not adopt, prospectively, laws which may have since been passed by the states (though it enables the several courts to adopt them), but only adopts those then existing.

4. It is not necessary, in order to establish that a particular mode of proceeding has been adopted by a United States court, that there should be found a written rule declaring such adoption. The practice of a court may be established without the existence of a positive written rule.

5. Under the practice which has prevailed in the district court for the Southern district of New York, an attachment may be issued in aid of a common law information prosecuted by the United States.

Motion to vacate an attachment.

[1][Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

J. E. Ward and C. A. Seward, for the motion.

T. Simons, Asst. U. S. Dist. Atty., opposed.

BLATCHFORD, District Judge. This is an action at common law. The first paper placed on the records of the court in it was an information, which was filed on March 1, 1867. It states that the attorney of the United States comes "in a suit of common law and informs the court" that the United States bring suit against the defendant for the cause of action propounded in two articles which follow in the information. The substance of them is, that the United States were entitled to the immediate possession of certain bales of cotton, their property; that the defendant, being in possession of the cotton, unlawfully converted and disposed of it to his own use; that such conversion was fraudulent; and that the proceeds of the property had been disposed of by the defendant with intent to secrete the same from and to defraud the United States. The information prays that process of attachment may issue against the property of the defendant, and is accompanied by an affidavit in support of the application for an attachment.

Indorsed on the information is a direction signed by my predecessor, and dated February 28, 1867, in these words: "Let process of attachment issue against the property of the within-named Vernon K. Stevenson, agreeably to the prayer of the within-named information, and let the said Vernon K. Stevenson be cited to appear on the return of process herein, and answer to the allegations in this behalf." Thereupon, process was issued to the marshal on March 1, 1867, reciting that the information had been filed "in a certain action at common law," and commanding the marshal to cite the defendant, if found in his district, to appear and answer the information, and, also, to attach the property of the defendant. The information and the process stated the claim at the sum of one million dollars.

The return of the marshal to the process was that he had served a copy of it on the defendant, and had also served a copy of it on the president of a bank in the city of New York, stock in which was alleged to be owned by the defendant.

On March 1, 1867, a notice, signed by the district-attorney, and entitled in the suit and indorsed as being a lis pendens, was filed in the office of the clerk of this court. The notice states "that an action has been commenced, and is now pending, in this court, upon an information against the above-named defendant, and that a warrant of attachment, according to the rules and practice of this court and the statute in such case made and provided, has been duly issued therein against all and singular the property of the said defendant, Vernon K. Stevenson, both real and personal, situate and being within the city and county and state of New York, and also

situate and being in the Southern district of the United States for the state of New York, and that the following is a description of all and singular the real estate of the said defendant, Vernon K. Stevenson, situate and being within the said city and county and state of New York, attached, levied upon, and affected under and by virtue of said process or warrant of attachment," and closes with a specific description, by metes and bounds, of the real estate referred to, which embraces forty lots of land in the city of New York. A like notice of lis pendens was filed by the district-attorney in the office of the clerk of the supreme court for the city and county of New York.

The defendant put in his answer in the suit, and the issue has been tried by a jury, resulting in a verdict for the defendant, under the direction of the court, on a question of law. [Case No. 16,396, opinion of district court.] The government has taken steps toward a review of the decision. [Id., opinion of circuit court.]

The defendant now moves to vacate the attachment on the ground that it was issued without authority of law, and to set aside the notices of lis pendens, on the ground that they were filed without authority of law.

In regard to the attachment, it is claimed that this court has no authority to issue any attachment in a common law action; that in the practice of the courts of the United States for this district, no attachments have ever been issued in common law actions; that the right to issue attachments and the right to file notices of lis pendens are not matters of ordinary legal right, but exist only as creations of positive statutes; and that there is no statute of the United States which authorizes this court to issue an attachment, or to sanction the filing of a notice of lis pendens in a suit of the character of the present one.

This suit must necessarily be regarded as a suit at common law, or this court would have no jurisdiction of it; for, by sections 9 and 10 of the judiciary act of September 24, 1789 (1 Stat. 77), no jurisdiction of any equity suit is given to this court, except of suits in equity against consuls or vice-consuls; and by section 9 of that act, in connection with section 4 of the act of March 3, 1815 (3 Stat. 245), jurisdiction is expressly given to this court of all suits at common law where the United States sue.

The statute which governs the forms of process and the forms of proceeding, and the modes of proceeding in suits at common law, in the courts of the United States, is the act of May 8, 1792 (1 Stat. 275). The second section of that act provides that "the forms of writs, executions, and other process, except their style and the forms and modes of proceeding in suits of those of common law, shall be the same as are now used in the said courts respectively, in pursuance of the act entitled 'An act to regulate processes in

the courts of the United States,' . . . . except so far as may have been provided for by the act to establish the judicial courts of the United States, subject, however, to such alterations and additions as the said courts respectively shall in their discretion deem expedient, or to such regulations as the supreme court of the United States shall think proper, from time to time, by rule, to prescribe to any circuit or district court concerning the same." The act referred to, "to regulate processes in the courts of the United States," is the act of September 29, 1789 (1 Stat. 93), the second section of which provides "that until further provision be made, and except where by this act or other statutes of the United States is otherwise provided, the forms of writs and executions, except their style, and modes of process and rates of fees, except fees to judges, in the circuit and district courts, in suits at common law, shall be the same in each state respectively as are now used or allowed in the supreme courts of the same." This court existed when these acts of 1789 and 1792 were passed. It, therefore, is required, by the act of 1792, to use as its forms of process and modes of proceedings in suits at common law, the forms and modes which it was using in such suits on May 8, 1792 (and which forms and modes were required by the act of 1792, taken in connection with the act of 1789, to be the forms and modes used or allowed on September 29, 1789, in the supreme court of the state of New York), subject only, as provided by the act of 1792, to any provisions contained in the judiciary act of September 24, 1789 (1 Stat. 73), and also to such alterations and additions as this court shall, in its discretion, deem expedient, and also to such regulations as the supreme court of the United States shall think proper, from time to time, by rule, to prescribe to this court.

The first section of the act of May 19, 1828 (4 Stat. 278), does not apply to the present case, because the state of New York was admitted into the Union before September 30, 1789; and the third section of that act applies only to final process.

It is unnecessary to cite authorities to show that on September 29, 1789, there was no process of attachment of property used or allowed in the supreme court of New York in a common law action where an individual was the plaintiff, and where the defendant was personally served with process in the action, unless the defendant was shown to be an absconding or concealed debtor. No general process of attachment of property in a common law action in favor of an individual plaintiff was known to the common law. The only statute authority which existed on September 29, 1789, for the issuing of an attachment by the supreme court of New York in a common law action, was that conferred by the act of the legislature of New York, passed April 4, 1786 (1 Greenl. Laws N. Y. 214),

which provides that when a debtor secretly departs the state, or keeps concealed within it, a creditor, or creditors, to a certain amount, may apply to a judge of the supreme court showing the debt, and the departure or concealment of the debtor, with intent to defraud his creditors of their just dues, or to avoid being arrested by the ordinary process of law, and proving the departure or concealment by two credible witnesses, and obtain from the judge a warrant to attach the real and personal estate of the debtor. The present case was not one of that kind.

No provisions on the subject are found in the judiciary act of September 24, 1789; and the supreme court of the United States has never, by rule, prescribed any regulations to this court in regard to the issuing of attachments in common law actions.

The supreme court decided, in Wayman v. Southard, 10 Wheat. [23 U. S.] 1, that the act of 1792 was confined, in its adoption of state laws, or regulating the modes of proceeding in suits at common law, to those in force in September, 1789; that it did not recognize the authority of any laws of that description which might be afterwards passed by the states; and that it enabled the several courts of the Union to make such improvements in their forms and modes of proceeding as experience might suggest, and especially to adopt such state laws on the subject as might vary to advantage the forms and modes of proceeding which prevailed in September, 1789.

It is not necessary that a practice of a court to be recognized or sustained, should be embodied in a written rule. Written rules are undoubtedly preferable, but a practice in respect to a particular matter in a court may be established without the existence of a positive written rule. Fullerton v. Bank of U. S., 1 Pet. [26 U. S.] 604, 613; Duncan v. U. S., 7 Pet. [32 U. S.] 435, 451. The fact that my learned predecessor, who presided in this court for more than forty years, granted this attachment, is the strongest possible evidence that he must have regarded it as the practice of the court to issue an attachment in a case like the present one, and that he must have understood either that such practice existed in the supreme court of New York on September 29, 1789, or that a departure had been established, either by written rule or by the practice of this court, from the practice which existed in September, 1789; and that this court had, within section 2 of the act of 1792, altered its form of process and mode of proceeding in the suit, like the present one, in such manner as to authorize the issuing of the attachment that was issued in this case. The judge who issued it knew better than any other person the practice of this court in the respect in question,

and his action in a case of the character of the present one, involving a claim of so large an amount, and affecting real estate of such large value, must be regarded by me as conclusive in regard to the fact of the establishment and existence of a practice which warranted the attachment in this case. Whether he regarded it as reposing on the privilege of a prerogative of the United States, or on the construction of some written rule of this court, or on acquiescence and uniform mode of proceeding, or on some specific acts of congress, cannot be ascertained, as his views are not on record, and the point is immaterial on this application. I am satisfied, from inquiry, that the matter of issuing the attachment was deliberately considered by him, and that his conclusion was not hastily reached. The propriety of that conclusion is strengthened by the fact that nearly two years have elapsed without the authority of the court to issue the attachment being questioned by the defendant. So far, therefore, as the motion to vacate the attachment is founded upon an alleged want of authority in this court to issue it, the motion must be overruled.

The act of March 14, 1848 (9 Stat. 213), was referred to as affecting the question. The act provides "that whenever, upon process instituted in any of the courts of the United States, property shall hereafter be attached to satisfy such judgment as may be recovered by the plaintiff in such process, and any contingency occurs by which, according to the laws of the state, such attachment would be dissolved upon like process pending in, or returnable to, the state courts, then such attachment or attachments made upon process issuing from, or pending in, the courts of the United States within such state, shall be dissolved, the intent and meaning of this act being to place such attachments in the courts of the states and the United States upon the same footing." No contingency, such as is referred to in this act, is shown to have occurred, as a ground for dissolving this attachment.

So far as the motion is based upon the ground of amnesty and pardon, of which the defendant claims the benefit, those matters go to the entire action, and not merely to the question of attachment, and must be brought up, if at all, by way of plea. The question of pardon was so brought up in the Case of Armstrong's Foundry, 6 Wall. [73 U. S.] 766.

If the attachment was properly issued, it was not irregular to file in the office of the clerk of this court the notice of lis pendens that was filed therein. As to the one filed in the office of the clerk of the state court, this court has no control over the records of that court, or over the action of the district-attorney in filing it there.

Motion denied.